# Joshua S. Peers and Adaline C. Peers v. The Consolidated Coal Company, of St. Louis.

1. CONSTRUCTION OF CONTRACTS—*Interpretation of Covenants.*—The rule for the interpretation of covenants is to expound them so as to give effect to the actual intent of the parties, collected, not from a single clause, but from the entire context. The scope and end of every matter is principally to be considered, and if these are satisfied, then the matter itself and the intent thereof are also satisfied.

2. CONSTRUCTION OF DEEDS—*Intention of the Parties to Prevail.*—In construing deeds and other writings, courts seek to ascertain and give effect to the intention of the parties, and for that purpose they will take notice of attendant circumstances and by them determine such intention.

3. COVENANTS—*Form of Words Immaterial.*—No particular form of words is necessary to constitute a covenant. Whatever shows the intent of the parties to bind themselves to the performance of a thing stipulated, may be deemed a covenant, without regard to the expressions used.

4. EXPRESS COVENANTS—*How Sometimes Created.*—Express covenants may be created by words which, at first view, appear to operate as conditions, qualifications or defeasances of covenants.

5. ASSIGNMENT OF LEASE—*Does Not Discharge the Lessee from His Covenants.*—Where, by the terms of a deed, construed in accordance with proper rules of construction, a person accepts a conveyance of leased premises, subject to the performance by him of the agreements in the lease which, by the terms thereof, the lessee was to perform, such person can not, by an assignment of the lease, discharge himself from an express covenant to pay a royalty under the terms of the lease for the sole and exclusive right of mining and operating in coal upon the demised premises.

**Assumpsit,** for royalties under a mining lease. Appeal from the Circuit Court of Madison County; the Hon. ALONZO S. WILDERMAN, Judge, presiding. Heard in this court at the February term, 1895. Reversed and remanded. Opinion filed July 1, 1895.

## STATEMENT OF THE CASE.

On December 17, 1870, appellants leased to the Abbey Coal and Mining Co., for the term of twenty-five years, the sole and exclusive right of mining and operating in coal on the following described lands : The S. W. ¼ of the N. W. ¼, and the W. ½ of the S. W. ¼ of Sec. 4, T. 2 N., R. 8, W. of the 3d P. M., in St. Clair County, Ill. By the terms of the lease the lessee agreed to begin mining coal from said land within a year from date of lease, and guaranteed a yearly royalty of not less than $1,200, after the expiration of said year, and if no coal should be mined, agreed to pay monthly installments of $100 each on the guaranteed annual royalty of $1,200. These monthly payments were to be considered as royalty advanced, and the lessee was to have the right to mine coal to the extent of the royalty paid, but it should not be less than $100 per month. On August 11, 1886, the Abbey Coal and Mining Co., by deed, conveyed to appellee all its interest in the said premises, together with all the rights, privileges and appurtenances thereto pertaining or belonging, as the same are conveyed or assured to the Abbey Coal and Mining Co. by said lease, and by the terms of the deed appellee took the premises subject to the agreements in the lease mentioned, to be performed by the lessee therein, and entered into the possession thereof under said deed. On November 28, 1887, appellee, by a written

instrument, in which no consideration was mentioned, assigned, transferred and set over to one Jacob Lasurs, the said lease, and it is recited in the written instrument as follows: "It being the intention of the parties hereto, that the said Jacob Lasurs shall hereby acquire all the rights ever acquired by the said Consolidated Coal Company of St. Louis, in or to the leasehold interest first above named, and shall assume all the duties and obligations with respect to the premises in the said lease mentioned, the assignment of said lease being hereby accepted by the said Lasurs." The acceptance of this lease was acknowledged by Lasurs December 1, 1887, before one Miller, notary public. Fletcher, a witness for appellee, testified he put Lasurs in possession under this assignment by taking him to the premises in a buggy and telling him that was the property they were assigning to him. That the engine had then been taken out, the shaft was abandoned and all the hoisting apparatus had been taken away, and the shaft was filled up with water; it could not be worked for mining without a deal of expense. Lasurs, for appellant, being asked how the assignment came to be made, testified as follows: "Captain Miller, the police magistrate, came to me. I was in Webber's saloon, and he came to me and stayed around there awhile, and he called me to have a drink, and he says to me, 'I would like you to come to my office, I want to see you.' He didn't tell me what was wanted or anything. I went up there, and he told me he had an assignment to make to me, and I wanted to know what it was, and said 'I don't want to get in trouble of any kind; don't want to injure anybody.' He insisted I wouldn't get in any trouble if I did; that he was going to give it to somebody, whether or no, and I said I suppose I had just as well have it as anybody, and I accepted it. The consideration was, he said he had $5 to pay anybody that would take it. I was after the $5. If it was to be given away I supposed I ought to have it as well as anybody. He gave me the $5. I did not do anything toward taking possession of and using and operating the mine. I believe I went down in a buggy with Fletcher; he showed me the

property; that was all he said. He put me in possession that way. Have done nothing to that mine since. There was a hole there; that was all I could see; there was nothing given me. There was a drum and boiler there. No closed building there that I could have a key to. Fletcher said, ' This is the property that is assigned to you and you can take it.' " It appears, also, Captain Miller was the notary who took the said acknowledgment of Lasurs, and a copy of assignment was served on Joshua S. Peers, December 6, 1887, by Wm. Fletcher, superintendent.

The cause was tried by the court by agreement under the plea of general issue and the following stipulation: "It is agreed and stipulated by the parties to the above entitled suit that defendant may prove all proper defenses under the above plea of the general issue, and the plaintiffs may rebut without further pleadings. At the request of defendant the court held the following propositions to be the law:

1. The court is requested to hold that upon the whole evidence in this case the plaintiff can not recover. *Held.*

2. If the court believes from the evidence that the defendant, by an instrument in writing under its seal, bearing date November 28, 1887, assigned and transferred to Jacob Lasurs the lease made by the plaintiffs to the Abbey Coal and Mining Company, and by said company sold and assigned to defendant, and thereby set over to Lasurs all the defendant's right, title and interest in and to the leasehold estate thereby conveyed, and the said Lasurs accepted the said assignment and went into possession thereunder, and that plaintiffs received notice of said assignment on the 6th day of December, 1887, then the plaintiffs can not recover in this case. *Held.*

3. The court is requested to hold as a matter of law applicable to this case, that there is nothing in the deed made by the Abbey Coal and Mining Company to the defendant which binds defendant in law to pay plaintiffs any royalty during any time the leasehold mentioned in the declaration was vested by assignment of defendant in some person other than defendant, and if the court believes from the evidence

that the defendant assigned the lease mentioned in the declaration, and all right, title and interest therein, which is acquired by the said deed from the Abbey Coal and Mining Company to Lasurs, and that said Lasurs accepted said assignment, and that said assignment was made in November or December, 1887, and was in writing, under defendant's seal, and that after said assignment the defendant relinquished possession of the premises described in said lease, then the plaintiff can not recover. *Held.*

4. If the court believes from the evidence that the defendant, in November or December, 1887, assigned and transferred to Jacob Lasurs, by an instrument in writing, under defendant's seal, all the defendant's right, title and interest, as assignee of the lease in the declaration mentioned, and thereby set over to Lasurs its leasehold estate held by it under said lease, and the said Lasurs accepted said assignment, and the defendant thereafter relinquished possession of the premises in said lease described, then the plaintiffs can not recover in this action. *Held.*

The court found for the defendant and entered judgment for costs in its favor. Plaintiffs thereupon took this appeal.

JOHN G. IRWIN and WM. H. KROME, attorneys for appellants.

CHARLES W. THOMAS, attorney for appellee.

MR. JUSTICE GREEN DELIVERED THE OPINION OF THE COURT.

This suit was brought by appellants against appellee to recover the annual royalty of $1,200, accruing to plaintiffs for the period from and after September 20, 1888, up to September 20, 1891. This case and another between the same parties, involving substantially the same question, and brought by appeal of the Consolidated Coal Company from the court below, where judgment against it for three years' annual royalty from September 20, 1890, to September 20, 1894, was entered, were argued orally before us, and as we understood counsel, no mere technicality was to be considered, but we were requested to decide the material question

whether or not the Consolidated Coal Company of St. Louis, Missouri, under the evidence in the record, was liable for the said annual royalty after it had made the assignment to Lasurs.

This question was considered and practically decided by us in the case of the Consolidated Coal Company of St. Louis, Missouri, v. Joshua D. Peers and Adaline C. Peers, reported in 39 Ill. App. Rep. 453, which was a suit brought by the appellees in that case to recover from the appellant the royalty mentioned in said lease for the year beginning September 17, 1888, and ending September 17, 1889.

It was insisted by the defendant in the trial court, that after it had made said assignment to Jacob Lasurs, it was absolved from all liability to pay any subsequently accruing royalty to plaintiffs and requested the trial court to hold as the law the following proposition : " If the court believes from the evidence that the defendant, in November or December, 1887, by an instrument in writing, assigned and transferred to one Jacob Lasurs all its right and title and interest as assignee of the lessee in the lease in the declaration mentioned, and set over to said Lasurs its leasehold estate under said lease, then the plaintiffs can not recover in this case." . The court refused to so hold and entered judgment for the amount of royalty claimed.   This court held it was not error to refuse to hold this proposition to be the law.   That appellant, by accepting the conveyance from the Abbey Coal and Mining Company, took the leased premises subject to the agreements in the lease mentioned, as made therein, and became liable to plaintiffs, the lessors, to the same extent as the Abbey Coal and Mining Company was liable, and by the terms of its covenants could not, by assignment to Lasurs, discharge itself from such liability.   And further held the evidence warranted the finding, and affirmed the judgment.   An appeal from this decision was prosecuted to the Supreme Court and the judgment was there again affirmed.   Consolidated Coal Company v. Peers et al., 150 Ill. 344.   In the opinion it is said : " Appellant urges that it, by accepting the deed of assignment from the Abbey Coal and Mining Company, did not, by virtue of certain language

used in that deed, expressly agree to perform all the covenants contained in the lease even after the assignment to Lasurs. That question is not presented for our decision by the record. In order to have raised and preserved that question of law for the decision of this court, it should have offered in the trial court a proposition to the effect that there was nothing in the deed poll made to it by the Abbey Coal and Mining Company, which, in law, bound it to pay the royalty accruing after the assignment to Lasurs."

We do not understand from this that the Supreme Court intimated a doubt as to the correctness of the holding of this court upon that question, or as to the correctness of the meaning and construction given to the provisions of said deed by this court, upon which such ruling is based. In the case at bar we have again examined the question, assisted by the able arguments, printed and oral, of the counsel for the respective parties and by the authorities cited on behalf of each, and feel constrained to adhere to the rulings announced in our former decision.

Counsel for appellee contends that the assignee of a lessee is not liable, except as to express covenants, after a second assignment, and therefore, it being the assignee of the original lessee, and the leasehold interest having been again assigned by it to Lasurs, its liability ceased. Appellants do not deny the general doctrine thus announced, but contend appellee, in the deed by which it got title to the premises, did expressly covenant to pay the royalty sued for.

To properly determine which of the two contentions is right, it becomes necessary to interpret and give construction to said deed, and thus discover the real interest and purpose of the parties to it.

The rule for such interpretation and construction is declared in numerous adjudicated cases in this and other States. In the opinion in Consolidated Coal Company v. Peers et al., *supra*, the Supreme Court say, quoting from Walker v. Physie, 5 Barr 193, that the great rule for the interpretation of covenants is to so expound them as to give effect to the actual intent of the parties, collected, not from a single clause, but from the entire context, and quoting from Rem-

ger v. Fogessa, Plowd. 18, as follows: "The scope and end of every matter is principally to be considered, and if the scope and end of the matter be satisfied, then is the matter itself and the intent thereof also satisfied;" and then say the doctrine of these cases has been frequently affirmed by this court and announced in decisions too numerous to specify.

It is also said in Keucken v. Valt, 110 Ill. 264: "In construing deeds and other writings, courts must seek to ascertain and give effect to the intention of the parties, and for that purpose they may and will take notice of attendant circumstances and by them determine such intention." In Campbell v. Shrum, 3 Watts 63, it is said: "No particular form of words is necessary to constitute a covenant. Whatever shows the intent of the parties to bind themselves to the performance of a thing stipulated, may be deemed a covenant, without regard to the form of expression used. Express covenants may be created by words which, at first view, might appear to operate rather as conditions, qualifications or defeasances of covenants." The same doctrine is held in numerous other cases, and our attention has not been called to any case where a different rule is announced. Examining the deed to appellee by the light of this rule, an express covenant by appellee to pay the accruing royalty to appellants is clearly established. We find this language in the deed, after describing the premises, etc., conveyed: "As the same are conveyed or assured by a lease dated December seventeen, eighteen hundred seventy, between Joshua S. Peers and wife and the Abbey Coal and Mining Company * * * and subject to the agreements therein mentioned to be performed by the lessee therein." Then afterward the covenant of the grantor is, to protect appellee against all other or prior liens or incumbrances, *except those above specifically mentioned.* This exception can be held to refer only to the "agreements to be performed by the lessee." No other lien or incumbrance, but the burden of paying royalty is specifically mentioned.

This burden is not excepted, but is assumed by appellee, not in the limited sense suggested by counsel for appellee, to continue so long only as it remains a privy in estate with

Peers v. Consolidated Coal Co., of St. Louis.

appellants, but as an express covenant. This view as to the intent and meaning of the parties is fortified by other facts and circumstances proper to be considered in this connection. By this deed the Abbey Coal and Mining Company conveyed, in addition to the premises described in the declaration, several hundred acres of land and leasehold interests, and all interest in any other pieces or parcels of land lying in said county, and all buildings, structures, machinery, fixtures, tools, furniture, mules, and every other article used or ready to be used in or about the business of mining coal on the premises conveyed. All these leasehold interests, by the terms of the deed, were taken by appellee subject to the performance of all agreements to be performed by the lessees named therein. It thus appears the Abbey Coal and Mining Company, grantor, by this deed divested itself of its entire assets, but not of its liability as lessee; and the appellee became invested with these assets, and succeeded its grantor in the coal mining business. Under these circumstances it is not just nor reasonable to hold the parties intended that the grantor should part with its entire interest without provision indemnifying it from its liability as lessee, invest appellee with the ownership and possession of said interest with power to assign it to some irresponsible party and thereby absolve itself from liability, and leave its grantor liable to pay the royalty for the remaining portion of the term of twenty-five years. In view of the clauses in the deed, and the facts and circumstances above mentioned, we reach the same conclusions stated in our former opinion, that by the terms of the deed, construed in accordance with the proper rule of construction, appellee accepted the conveyance of the leased premises, subject to the performance by it, of the agreements in the lease, which, by the terms thereof, the lessee was to do and perform, and did not, by the assignment to Lasurs, discharge itself from its express covenant to pay the royalty sued for, and for the payment of which it is legally liable. We therefore hold the finding and judgment of the court below for defendant was erroneous, and the judgment is reversed and cause remanded.