Kewanee Boiler Corporation, Appellant, v. The American Laundry Machinery Company, Appellee.

Gen. No. 38,814.

Opinion filed March 30, 1937. Rehearing denied April 13, 1937.

Winston, Strawn & Shaw, of Chicago, for appellant; James H. Cartwright and Albert W. Potts, both of Chicago, of counsel.

Teller, Levit, Silvertrust & Levi, of Chicago, for appellee; Carroll A. Teller and H. J. Goldberger, of Chicago, of counsel.

Mr. Presiding Justice John J. Sullivan delivered the opinion of the court.

This is an action by plaintiff, Kewanee Boiler Corporation, an assignee of the lessee's interest under a long term lease, against a subsequent (and the ultimate) assignee of such interest for reimbursement for expenditures made by plaintiff in performing the lessee's obligations under the lease, all of which expenditures arose after defendant's default and include rent paid to the lessor and taxes, insurance and similar charges which constitute additional rent due under the lease. Plaintiff, having elected to stand and abide by its amended complaint after the trial court had sustained defendant's motion to strike same, judgment was entered October 25, 1935, in favor of defendant and against plaintiff for costs. This appeal followed.

The facts as alleged in plaintiff's amended complaint are substantially that a lease of certain premises on West Washington street, Chicago, was entered into March 28, 1922, between Crilly Brothers, as lessors, and Kewanee Boiler Corporation, an Illinois corporation, as lessee, for a term of approximately 20 years, at a gross rental of $280,000, payable at the rate of $1,166.66 monthly; that under the terms of the lease the lessor constructed a building upon the leased premises

and the 20-year period of the lease began from the time of the completion of the building; that article 21 of the lease provided that the lessee's interest might be assigned without the lessor's consent, under certain conditions therein set forth, provided, however, that the obligations of the lessee and any assignee were not thereby released or discharged; that the aforesaid Kewanee Boiler Corporation entered into possession of the premises and performed the obligations of the lessee under the lease until on or about November 26, 1927; that thereafter there were five assignments of the lessee's interest under the lease, which were as follows: November 26, 1927, Kewanee Boiler Corporation, the original lessee, to Kewanee Boiler Company, a Delaware corporation; December 10, 1927, the Kewanee Boiler Company, a Delaware corporation, to the American Radiator Company; December 14, 1927, the American Radiator Company to the Kewanee Boiler Corporation, plaintiff; February 1, 1929, the Kewanee Boiler Corporation, plaintiff, to the General Laundry Machinery Corporation; and October 28, 1930, the General Laundry Machinery Corporation to the American Laundry Machinery Company, defendant.

It was further alleged that all said assignments were by written instrument duly executed by the respective assignors and that all the successive assignees, including both plaintiff and defendant, entered into agreements by which they assumed all the obligations of the lessee under the lease; that each of the assignees entered into possession of the leased premises under the respective assignments and the obligations of the lessee, under said lease, were at all times performed until February 28, 1933, when defendant abandoned said leased premises and refused further to perform the covenants of the lease; that from February 1, 1929, when the General Laundry Machinery Corporation received its assignment of the lease from plaintiff, until

April, 1930, it paid the rent provided by the lease directly to the lessors; that in April, 1930, the lessors notified plaintiff that thereafter they would look to it for payment of rent due under the lease; and that plaintiff thereupon so advised the General Laundry Machinery Corporation and commencing with the month of May, 1930, the latter paid the monthly rental to plaintiff, which in turn paid same to the lessors.

It was then alleged that in June, 1930, defendant entered into a contract with the General Laundry Machinery Corporation whereby it purchased from said corporation substantially all its assets, including its name, good will, etc., and as a part of said contract defendant assumed the obligations of said General Laundry Machinery Corporation, including its obligations under the lease; that this transaction was consummated on or about October 28, 1930, and separate agreements of assignment of lease and assumption of liability thereunder were executed as of that date and delivered; and that defendant's agreement of assumption of the lease was, in part, as follows:

"In consideration of the foregoing assignment, the undersigned hereby assumes and agrees to make all payments from and after November 1, 1930, and to perform all the covenants of the lease above referred to, to be made and performed."

It was also alleged that defendant thereupon entered into possession of the leased premises; that defendant's assignor, the said General Laundry Machinery Corporation, thereafter became insolvent, its affairs being placed in the hands of a receiver, and that it has been ever since and is now totally insolvent; that at the time of such take-over of the assets and assumption of the liabilities of its assignor by defendant, the American Laundry Machinery Company was fully aware of the procedure theretofore followed in com-

plying with the terms of the lease, and in paying the rent for the month of November, 1930, defendant delivered to the General Laundry Machinery Corporation its check for $1,166.67, payable to plaintiff, with the following letter dated December 1, 1930:

"Gentlemen:

"Rental, property located at 822 West Washington Blvd., Chicago, Illinois.

"Enclosed is our check for $1,166.67 in payment of rent for the month of December on the property located at 822 West Washington Blvd., Chicago, in accordance with the terms of the lease on said property, which has been transferred to us.

"Please sign and return the enclosed receipt.

Very truly yours,

The American Laundry Machy. Co.,

W. L. Clawson,

Asst. Treasurer."

It was further alleged that each month thereafter to and including February, 1933, defendant sent plaintiff a like check covering such rent, together with a letter of similar import; that on or about February 27, 1933, defendant having been in possession of the leased premises under said lease, assignment and assumption for more than two years, notified plaintiff that it intended to vacate said premises immediately and that it would no longer perform the covenants and obligations of the lessee under said lease or make any payments due thereafter; that February 28, 1933, defendant did vacate the premises; that no rent has been paid by defendant since that date; that plaintiff took possession of said premises from defendant purely for the purpose of minimizing the damages and preventing a default in a sublease of a portion of same under a stipulation with defendant that the acceptance of possession of the premises was without prejudice to plaintiff's

right to enforce the liability of defendant under said lease, assignment and assumption; and that thereafter upon the demand of the lessors, plaintiff continued to pay the rental to them as well as taxes and insurance on the leased premises and perform the other covenants and conditions of the lease.

Attached to the amended complaint is a statement of the amounts paid by plaintiff and the dates and purposes of such payments. Said statement contains also an itemized account of the income from the portion of said premises covered by a sublease made originally by defendant, which income has been credited to the defendant by deducting same from the amounts claimed due from it. The tax payments made by plaintiff were for general taxes on the leased premises for the years 1930, 1931 and 1932, during which period defendant was in actual possession. The net amount of expenditures over income claimed by plaintiff to be due from defendant for the period from March 1, 1933, to August 1, 1934, is $23,094.54.

Plaintiff contends that its amended complaint stated a cause of action which defendant should have been required to answer.

The essential question presented for our determination is whether the ultimate assignee of lessee's interest under a lease, who assumed the obligations of same, is liable for the performance thereof to an intervening assignee, who being also liable for its performance, has performed the conditions of the lease pursuant to demand by lessor.

It must be borne in mind that defendant, the ultimate assignee, enjoyed the undisturbed possession of the premises until it saw fit to voluntarily abandon them, that it sublet a portion of same and that at the time of its abandonment it was and still is under its assignment entitled to the possession of the premises during the balance of the term of the lease. It must

also be borne in mind that defendant, as well as plaintiff, not only was an assignee of the lease but assumed its obligations under an appropriate written instrument. There was no privity of estate between plaintiff, which was an intermediate assignee, and defendant, the ultimate assignee. Neither was there any direct contract between plaintiff and defendant.

Preliminary to our discussion of the major issue involved it is well to consider the rules applicable generally to lessors, lessees and assignees of lessees in their relationship with each other. We think the following propositions, as stated in plaintiff's brief, are clearly established:

"*First,* That an assignee of the lessee's interest under a long term lease who does *not* agree to perform the lease during the balance of the term may be held liable for performance only during the period of his occupancy. During that period such assignee is liable to:

"(a) The Lessor—by privity of estate;

"(b) The Lessee—and any intermediate assignee, who, being also liable on the lease, has performed the same—on the well settled principle that where two persons are liable for the performance of an obligation and one of such persons performs and the other enjoys the benefit of the performance then the person performing may recover over against the person who enjoys the benefits and should, therefore, bear the burden.

"The liability of such assignee for subsequent breach may be terminated by reassignment.

"Second. An assignee of the lessee's interest under a long term lease, who assumes and agrees to perform the lease during the balance of the term, may be held liable by the lessor for performance both during the period of his occupancy and after reassignment. While in possession such assignee is liable to the lessor, the

lessee and any intermediate assignee, who, being liable so to do, has performed the lease all in the same manner as one who has not expressly assumed the obligations. After termination of his occupancy such assignee is liable to the lessor and to his assignor by contract.''

That an assignee of a long term lease, who had assumed the obligations of same and thereafter reassigned said lease, is liable to the lessor for rent accruing after such reassignment is conclusively settled in *Springer v. DeWolf,* 194 Ill. 218, where the court said at p. 224: ''The appellant [original assignee] received a conveyance of the leasehold estate, received possession of such estate and assumed to pay the rent. There was thereby established between the appellant and the appellee [lessee] a privity of contract and a privity of estate. That privity of estate was terminated by the conveyance and transfer of possession of the demised premises to McGinniss. But the privity of contract—the contractual liability of the appellant—was not thus terminated. No valid reason is apparent to us why the appellant should not pay the rent he assumed.'' To the same effect are *Johnston v. Messinger,* 226 Ill. App. 397 and *Kagan v. Gillett,* 269 Ill. App. 311.

There can be no question, therefore, that defendant by its contract, assuming the obligations of the lease, became liable to the lessors to perform all the covenants of the lease, including that to pay rent during the entire remainder of the term thereof, regardless of whether it reassigned the lease or abandoned the premises. By its contract of assumption as a prior assignee, plaintiff's liability to the lessors also continued, notwithstanding its reassignment of the lease.

As heretofore shown plaintiff's immediate assignee was the General Laundry Machinery Corporation, which in turn assigned the lease as part of the general assignment of its assets to defendant, the latter assum-

ing its assignor's liabilities, including the specific assumption of the obligations of the lease. While the General Laundry Machinery Company is unquestionably liable to plaintiff as its immediate assignee under its contract of assignment and assumption, that company being insolvent, a judgment against it would be worthless and if limited to that remedy plaintiff would be precluded from recovery.

Plaintiff recognizing its liability and having been called upon by the lessors after defendant's abandonment of the premises to make the payments provided to be paid by the lessee, and having complied with the lessor's demand for such payments, is it entitled to reimbursement from defendant, which is primarily liable as the ultimate assignee of the balance of the term of the lease? This precise question has not heretofore been decided in this State, but upon reason and principle we can perceive no valid reason why defendant, the ultimate assignee, and as such still entitled under its assignment of the lease to the possession of the premises, should not pay the rent it assumed.

In *Moule v. Garrett* (1872) L. R. 7 Exch. 101, where the lessor recovered from the lessee damages for breach of a covenant to keep the premises in repair, committed while a subsequent assignee by mesne conveyance was in possession, and the lessee thereupon brought an action against such subsequent assignee who had assumed the obligations of the lease and where practically the same contentions were advanced by the defendant as are advanced here, the court said at pp. 103–104:

"Cockburn, C. J. I am of opinion that the judgment of the Court of Exchequer is right, and that it must be affirmed. The defendants are the ultimate assignees of a lease, and the plaintiff, who is suing them for indemnity against the consequence of a breach of a covenant contained in that lease, is the original lessee.

There is no doubt that the breach of covenant is one in respect of which the defendants, as such assignees, are liable to the lessor, and that they have acquired by virtue of mesne assignments the same estate which the plaintiff originally took. And I think that taking this estate from the assignee of the plaintiff, their own immediate assignor, they must be taken to have acquired it, subject to the discharge of all the liabilities which the possession of that estate imposed on them under the terms of the original lease, not merely as regards the immediate assignor, but as regards the original lessee.

"Another ground on which the judgment below may be upheld, and, as I think, a preferable one, is that, the premises which are the subject of the lease being in the possession of the defendants as ultimate assignees, they were the parties whose duty it was to perform the covenants which were to be performed upon and in respect of those premises. It was their immediate duty to keep in repair, and by their default the lessee, though he had parted with the estate, became liable to make good to the lessor the conditions of the lease. The damage therefore arises through their default, and the general proposition applicable to such a case as the present is, that where one person is compelled to pay damages by the legal default of another, he is entitled to recover from the person by whose default the damage was occasioned the sum so paid. This doctrine, as applicable to cases like the present, is well stated by Mr. Leake in his work on Contracts, p. 41: 'Where the plaintiff has been compelled by law to pay, or, being compellable by law, has paid money which the defendant was ultimately liable to pay, so that the latter obtains the benefit of the payment by the discharge of his liability; under such circumstances the defendant is held indebted to the plaintiff in the amount.'

"Whether the liability is put on the ground of an implied contract, or of an obligation imposed by law, is a matter of indifference: it is such a duty as the law will enforce. The lessee has been compelled to make good an omission to repair, which has arisen entirely from the default of the defendants, and the defendants are therefore liable to reimburse him.

"Willes, J. I am of the same opinion, on the ground that where a party is liable at law by immediate privity of contract which contract also confers a benefit, and the obligation of the contract is common to him and to the defendant, but the whole benefit of the contract is taken by the defendant; the former is entitled to be indemnified by the latter in respect of the performance of the obligation.

"Blackburn, J. I am of the same opinion, for the reasons given by my Brother Channell in the court below."

In *Burnett v. Lynch* (1826) 5 Barn. & C. 589, referred to in *Moule v. Garrett, supra,* where the lessor had recovered from the lessee for breach of covenant to keep the premises in repair, committed while the assignee of the lessee was in possession, without any assumption of the obligations of the lease by such assignee, it was held that the lessee might maintain an action on the case founded in tort against the assignee for failure to perform the covenants of the lease during the time such assignee was in possession.

In *Ashford v. Hack* (1849) 6 U. C. Q. B. 541, where the lessee had been obliged to pay damages to his lessor for the failure of an assignee of his assignee to pay the rent and keep the premises in repair, in holding that the lessee was entitled to recover from the second assignee the amount which he had paid to the lessor, the court said at p. 542:

"Here the declaration, it is quite clear, shews at any rate no right of action in covenant by the lessee against

Hack; and all that is said in Barrett v. Lynch in support of the action, founded as it was there on the plainest principles of justice, applies with at least equal force in the present case; for this defendant had not contracted with the plaintiff, who is suing him in tort, but took the place at second hand from Ramsay, through whom the plaintiff could derive no right of action. In this case, the plaintiff stands neither in the place of the lessor nor of his assignee, nor did he himself enter into any contract with the defendant, so that he could establish no action founded on contract. He would be absolutely without remedy at law, unless he could sustain this action; and it is fortunate that such a decision as that in Barrett v. Lynch has removed all difficulty.''

In *Mason v. Smith,* 131 Mass. 510, it was held that, even in the absence of any assumption of the obligations of the lease, a lessee may recover both from his assignee and a second assignee the taxes accruing during their respective terms, which the lessee had been obligated to pay to the lessor through their default. In 35 C. J., sec. 105, p. 1001, it is said that ''the assignee is liable to the lessee for breach of covenants running with the land, although there has been an intermediate assignment; and the lessee is also liable in the nature of a surety as between himself and the assignee for the performance of the same covenants.''

In *Studebaker Corp. v. Aetna Savings & Trust Co.,* 21 F. (2d) 385, decided by the United States Circuit Court of Appeals (seventh circuit), the Studebaker Corporation being the assignee of the lessee's interest under a lease assigned the entire balance of the term to the Buck Company, which in turn assigned same to the defendant bank in trust. The Studebaker Corporation was called upon to pay and did pay to the lessor the rent accruing after the assignment of the lease by the Buck Company to the defendant bank. In that case

it did not appear that the defendant had assumed the covenants of the lease, but the court, after concluding that the defendant was in possession or control of the premises, held at p. 387:

"We are of opinion that defendant must, under the circumstances, be held directly liable to pay the rent to plaintiff, as its landlord; but, if not, the facts show that there was privity of estate between defendant and the owner of the fee, to whom plaintiff, being obligated to pay the rent, did pay it, and is subrogated to the rights of the owner.

"Again, plaintiff may be held to have a right of recovery because, if there was an obligation on defendant to pay the rent to any one, then plaintiff was a mere surety for defendant, and it should repay."

In *Sun Realty Co. v. Rosenstein* (Cal.), 290 Pac. 1053, after holding that where assignees of lease assumed lessees' obligation, the lessees were sureties to lessor for assignees, who, as between themselves and lessor were principals, it was said at p. 1054:

"The legal relation here created is analogous to that of a grantee of a mortgagor who takes real property subject to a mortgage and agrees to pay such indebtedness. He becomes in law the principal debtor of the mortgagee, and the mortgagor becomes his surety."

It will be noted that the fundamental basis upon which recovery was allowed in all the cases cited was the existence of liability upon the part of both the lessee and the assignee to the lessor. It is true that these cases all deal with defaults of subsequent or ultimate assignees during their occupancy of the leased premises, but, in our opinion, there is no reason why the principles of law invoked are not equally applicable where the ultimate assignee's defaults are coupled with its voluntary and deliberate abandonment of the premises. The doctrine applied in *Moule v. Garrett, supra;* that "where one person is compelled to pay

damages by the legal default of another, he is entitled
to recover from the person by whose default the dam-
age was occasioned the sum so paid,'' we deem particu-
larly applicable to the situation presented here. We
think that the conclusion is inescapable that, since,
where there is no assumption of the obligations of a
lease by a subsequent assignee, the right of the lessor
is extended to the lessee and any intermediate assignee
to recover against such subsequent assignee for his
defaults during his occupancy of the premises, then *a
fortiori* when there is an assumption of the obligations
of the lease by the subsequent assignee and the lessor's
rights are thus enlarged, the rights of the lessee or any
intermediate assignee are equally enlarged to the ex-
tent that said lessee or intermediate assignee may re-
cover against the subsequent assignee on such assump-
tion.

The major contention stressed by defendant in its
brief and on oral argument to sustain the action of the
trial court in striking plaintiff's amended complaint is
that all the assignments of the lease, including the as-
signment to it, were invalid in that they did not con-
form to the terms of the lease. Under its provisions
the lessee was given the privilege of assignment with-
out the consent of the lessor, with the continuing lia-
bility, however, of such lessee to be bound by its cove-
nants. The lease also provided that any assignment
''shall be inoperative and have no effect'' unless (1)
the instrument evidencing same is in writing, (2) the
assignee in the assignment expressly accepts and as-
sumes all the terms and covenants of the lease and be-
comes bound personally to comply with them, (3) the
acceptance by the assignee is under seal, (4) the ac-
ceptance by the assignee is acknowledged, (5) the
assignment is recorded in the recorder's office of Cook
county, Illinois, and (6) a duplicate of the assignment,
duly executed, is delivered to the lessors within five
days following its delivery to the assignee.

Although it occupied the premises for more than two years and paid the stipulated rent during that period, defendant now insists that because its contract of assignment and assumption, as well as all the previous contracts of assignment and assumption, did not comply with all the foregoing formal requisites of the lease, the assignment to it of the balance of the term of the lease was absolutely null and void. This position is untenable.

In plaintiff's assignment to the General Laundry Machinery Corporation and the assignment by the General Laundry Machinery Corporation to defendant, all the requisites for assignment specified in the lease were complied with except those providing for the recording of such assignments and the delivery of a copy of them to the lessors. The assignments were in writing under seal and acknowledged, and the respective assignees expressly assumed the obligation of the lease. Under these circumstances it is preposterous to argue that such assignments were void. A lessee has a right to assign his term without the lessor's consent in the absence of a prohibitive restriction in the lease. Even where the lease contains an absolute prohibition against assignment without the lessor's consent, the rule is that an assignment in violation of such a prohibition is voidable and not void and the lessor may waive the condition. In addition to its occupancy of the premises under its assignment, defendant sublet a portion of them and collected rent from its subtenant until its abandonment. Such a sublease could have been made only on defendant's assumption that it was a valid assignee, enjoying the rights and privileges of such and in a position to perform the obligations of a subleasor. (*Everett v. Sexton,* 280 Ill. App. 350.) The important specifications of the lease as to assignments were in each instance complied with and such as were not, could, of course,

have been waived by the lessors, who must be held to have done so since they raised no objection to the occupancy of the premises by the tenants under the respective assignments. Defendant is still the ultimate assignee, the owner of the leasehold estate and entitled to the possession of the premises. While the lessors recognized the validity of all the assignments, they had the privilege of looking to any one of the assignees for payment of the amount due under the lease. Having insisted upon and secured payment from plaintiff for defendant's defaults in the payment of the rent due from it, no satisfactory reason has been advanced why, in fairness and justice, defendant, having agreed to perform, should not be compelled to reimburse plaintiff.

It matters not whether plaintiff's right to recover is predicated upon the doctrine that it is entitled to be subrogated to the lessors' rights against defendant, whether, having made the payments to the lessors the defendant should have made, plaintiff is entitled as a surety to be indemnified by defendant which was primarily liable, whether both plaintiff and defendant being liable to the lessors, plaintiff performing the obligation and defendant enjoying the benefit of performance or being entitled to enjoy such benefit, the former should be allowed to recover over against the latter, or whether "being compellable by law" to pay and having paid the rent because of the default in payment by defendant, which was "ultimately liable to pay," plaintiff is entitled to recover from defendant whose default occasioned the damage. In our opinion plaintiff's complaint sufficiently states a cause of action and defendant should have been required to answer it.

Such other points as have been urged have been considered, but in the view we take of this cause we deem it unnecessary to discuss them.

For the reasons stated herein the judgment of the circuit court is reversed and the cause remanded with directions to vacate the order striking plaintiff's complaint and for such further proceedings as are not inconsistent with the views expressed herein.

*Reversed and remanded with directions.*

FRIEND and SCANLAN, JJ., concur.